OPINION OF THE COURT
Eve Preminger, S.
The question presented by this unopposed application concerns the value of the elective share trust "grandfathered” *55 under the new right of election statute. (EPTL 5-1.1-A.) Does the value of the elective share remain one half of the net estate when decedent is survived by a spouse and no issue, as was the case under prior law (EPTL 5-1.1) or become one third of the net estate as generally provided by the new law? (EPTL 5-1.1-A [a] [2].)
The principal feature of the sweeping revision of New York’s right of election statute by EPTL 5-1.1-A, which became effective on September 1, 1992, is the elimination of the elective share trust as a means of satisfying a surviving spouse’s right of election. This legislation was first proposed in 1991 by the EPTL SCPA Legislative Advisory Committee, after considerable study. Its purpose was to eliminate the unfairness to surviving spouses, 80% of whom were believed to be women, of promising them an elective share of one third or one half of their spouse’s net estates, yet permitting fulfillment of the promise by the payment of the income of that portion. The old statute was rooted in the paternalistic view that the husband should be given the opportunity to relieve his wife: "of the burden of investment and care of her portion of the avails of his estate by placing such excess amount in the form of a trust, and he is also able to safeguard the principal of her share against a spendthrift wife.” (Reports of Commn to Investigate Defects in Laws of Estates, 1930 NY Legis Doc No. 69, at 88 [the Foley Commission].)
Announcement of the proposed elimination of the trust provoked an unusual degree of controversy. There was an outpouring of support from women’s rights groups, matrimonial lawyers and other interest groups, matched by a vigorous denunciation of the suggested change by members of the trusts and estates bar who believed the new statute to be unworkable.
The new law became effective as of September of 1992. Presumably in response to concerns that a period of adjustment was required, the Legislature added a provision preserving the elective share trust for decedents dying before September 1, 1994. (EPTL 5-1.1-A [a] [5].) However, the new statute had abolished the distinctions in the size of the elective share, which had turned upon whether decedent had issue, in which case the share was one third, or had no issue, in which case the elective share was one half. (The elective share is now uniformly one third of the net estate [EPTL 5-1.1-A (a) (2)].) Although this change in the size of the share was linked to the abolition of the trust, the provision grandfathering trusts *56 during a transition period is not explicit regarding the size of the trust.
Decedent John Bogart died one month after the new statute took effect, during the transition period. Because he was survived by a wife but no issue, under the old law. his wife’s elective share would have been one half of the net estate.
Absent the transition period, Mrs. Bogart could elect an outright one third of this estate.* She has filed her notice of election under the new statute. Under the old law, the elective share bequeathed by her husband would be one half of the net estate, with $10,000 outright. In the event the court determines the value of this trust to be an amount equal to one half the net estate, she elects the sum of $50,000 to be deducted from said trust, pursuant to EPTL 5-1.1-A (a) (5).
The petitioning executor proposes that the elective share trust be an amount equal to one half of the net estate as decedent intended and suggests that the widow has effectively elected the $50,000 outright amount payable therefrom, as provided by the new statute, or $40,000 more than the will provides. None of the interested parties disputes this interpretation.
Subdivision (a) (5) of EPTL 5-1.1-A preserves the elective share trust until September 1, 1994: "Where a decedent dies before September first, nineteen hundred ninety-four, paragraphs (c) (1) (D) through (c) (1) (K) of section 5-1.1 shall apply except that the words 'fifty thousand dollars’ shall be substituted for the words 'ten thousand dollars’ wherever they appear in such paragraphs.” The keystone to the interpretation of this provision lies in its invocation of the designated portions, (D) through (K), of subdivision (c) (1) of the prior statute. This reference must be read in context. Subdivision (c) of EPTL 5-1.1 governed the right of election for a surviving spouse against wills executed after a specified date in 1966. Paragraph (1) of this subdivision provides that "Where * * * a testator executes a will disposing of his entire estate, and is survived by a spouse, a personal right of election is given to the surviving spouse to take a share of the decedent’s estate, subject to the following”. What follows, insofar as here rele *57 vant, is subparagraph (B) which defines the term "elective share” for the entire paragraph: "The elective share, as used in this paragraph, is one-third of the net estate if the decedent is survived by one or more issue and, in all other cases, one-half of such net estate.” The subparagraphs which are expressly grandfathered in the savings clause of the new statute, (D) through (K), then permit the surviving spouse’s "elective share” to be satisfied by a trust in such amount for the life income benefit of the surviving spouse. Although subparagraph (B) is not expressly grandfathered, it necessarily defines the size of the elective share trust referred to in the ensuing subparagraphs, which are grandfathered.
The ambiguity which occasioned the institution of this proceeding arises from the fact that the term "elective share” is also defined (but as one third of the net estate) in the sections of the new statute which precede the savings clause. This definition could not have been intended to apply during the transition period. A review of the legislative history of the new statute reveals not a single reference to the possibility that a class of surviving spouses would be more disadvantaged during the transition period than they were under the prior law, by having their elective shares reduced to one third but still held in trust. There is no indication that the Legislature contemplated such a harsh outcome, or that there was any motivation to disfavor this group of spouses. Otherwise, this heralded statutory improvement in the rights of widows would leave a "grandfathered” wife with the worst of both rules. Such an outcome would require, at the least, explicit statutory direction. Here the legislation as proposed did not even contain the transition rule. The only reasonable interpretation of the statute is to preserve the one-half share trust during the transition period. Taking further into account the long-standing constructional preference in favor of the surviving spouse (e.g., Matter of Dearstine, 26 AD2d 736; Matter of Scheubel, 43 Misc 2d 674) the appropriate parsing of the new statute is that the grandfathered elective share trust is not reduced to one third where decedent left no issue.

 Her husband’s will leaves her an outright bequest of $10,000 and an elective share trust in the form of a charitable unitrust. The widow is to receive a 5% unitrust amount from this trust for her lifetime and upon her death the same amount is to be paid in succession to the grantor’s two sisters, who are both living. After the death of the survivor, the trust fund is to be distributed to Yale University and Philips Academy.